COLE, Judge.
An accident involving a pick-up truck and an automobile occurred in West Baton Rouge Parish on August 30, 1974. Jerry Wessinger, the driver of the automobile, was killed and Ronald Harris, a guest passenger in the same vehicle, was injured. Noah and Estelle Wessinger, parents of the deceased, and Ronald Harris appeal the decision rendered by the district court in favor of appellees, Frank Overton, the driver of the pick-up truck, and The Travelers Insurance Company, Overton’s insurer. We affirm.
The uncontroverted facts are that on the morning of August 30,1974, Jerry Wessinger was driving a 1964 Chevrolet automobile containing four'other occupants, including Ronald Harris, in an easterly direction on a two-lane hard surfaced road. At the same time a 1974 Ford pick-up truck was being driven in a westerly direction on the same road by Frank Overton. Both vehicles were traveling at about 50 to 55 miles per hour. These two vehicles collided, giving rise to this suit. However, from the evidence and testimony presented at trial, the sequence of events and actions of the parties leading to the collision are disputed.
The trial court found that prior to the accident Jerry Wessinger was driving his vehicle from one side of the highway to the other, thus crossing the center line and then returning to his own lane of traffic. Based on the testimony of the passengers in the Wessinger automobile, this erratic driving was the probable result of his visibility being reduced because his windshield fogged up and because of his attempts to clear off the windshield as he drove. In support of the trial court’s findings, Overton testified that he first observed the Wessinger vehicle swerve when the vehicles were about one-fourth of a mile apart. Consequently, he reduced his speed to about 35 miles per hour. He further testified that as the vehicles approached each other he assumed the Wessinger vehicle would then remain in its proper lane of travel.
The trial court further found that as the vehicles neared each other, Wessinger again veered into the westbound lane causing Overton to turn left in an attempt to avoid him. The record establishes that Overton also applied his brakes in response to the emergency situation with which he was thus confronted. Overton’s evasive action was unsuccessful and the resulting collision occurred approximately in the center of the *1274 highway with most of the debris left in the westbound lane. The trial court’s conclusions as to these facts are supported by the testimony of Frank Overton and that of the State Trooper who responded to the call. The State Trooper based his testimony on the evidence at the scene of the accident, his conversation with Overton, and his conversations with the passengers of the Wes-singer vehicle.
The trial court held that Frank Overton was not guilty of substandard or negligent conduct causing the accident either (1) by veering into the oncoming lane of travel or (2) by failing to take evasive action to avoid the Wessinger vehicle.
First, appellants contend that contrary to the findings of fact by the trial court Jerry Wessinger was operating his car in a safe manner and that Frank Overton drove his vehicle into the wrong lane of travel. Appellants base this contention upon the testimony of the four passengers of the Wes-singer vehicle. However, a review of this testimony reveals that it does not support such a contention. James Smith testified that he did not remember anything about how the accident occurred, only that he saw the truck as the vehicles neared the point of collision. Further, he testified that he did not know which lane either vehicle was in at the time of the collision. Appellant, Ronald Harris, also testified that he did not know how the collision occurred other than that it was a “head-on” collision. George Harris, appellant’s brother who was also a passenger in the Wessinger vehicle, testified that he really did not know in which lane the accident happened.
The testimony of Gerald Hawkins demonstrates inconsistencies as to how the accident occurred. First, his testimony is contradictory concerning the position of the vehicles after the impact. On direct examination he testified that the Overton vehicle was in the eastbound lane or that the cars were both in the center of the highway. Under cross-examination he testified that he did not know on which side of the road the collision occurred. Earlier in his deposition Gerald Hawkins had testified as follows:
Q. Where was [sic] the car and the truck in reference to the highway?
A. On the left-hand side of the road.
Q. On Mr. Overton’s side of the road?
A. Yeah.
Q. Both the car and the truck were on Mr. Overton’s side of the road?
A. Uh-huh.
Q. All the way on his side?
A. All the way.
This testimony is reiterated several times in his deposition and directly contradicts his trial testimony.
Appellants have failed to sustain their burden of proof that Frank Overton was responsible for the accident as a result of negligent conduct in driving his vehicle into the wrong lane of travel.
Next, appellants contend in the alternative that the appellee was negligent in that, after having earlier observed the appellant vehicle veer into the wrong lane some three or four times, he should have pulled off the road onto the shoulder. However, Overton was reasonable in concluding that Wessinger would operate his vehicle in a lawful manner and return to and remain in the proper lane, thus according him the right of way to which he was entitled in sufficient time to avoid a collision. See Woodard v. American Indemnity Company, 118 So.2d 284 (La.App. 1st Cir. 1960); Wood v. Manufacturers Casualty Insurance Company, 107 So.2d 309 (La.App. 2nd Cir. 1958); La.R.S. 32:72 (1962).
Overton’s reaction of slowing to 35 miles per hour was a reasonable response to the situation in which he found himself. While hindsight indicates that a better response might have been to pull over onto the narrow shoulder of the road and stop, the law does not interpose hindsight to hold a man to such a high standard of care. Rather, the law requires only that in the context of the situation in which a person finds himself that he react in a reasonable manner. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d *1275 385, 389 (1972). Overton observed the Wes-singer vehicle in his lane about three times within a distance of approximately one-quarter of a mile. He responded by slowing his vehicle and staying on his own side of the road, properly assuming that the approaching vehicle would remain on the appropriate side of the road as the vehicles passed. This response by Overton was reasonable under the circumstances and, therefore, was not substandard or negligent conduct creating any breach of a duty owed the driver or passengers of the other vehicle.
For the foregoing reasons, the decision of the trial court is affirmed, at appellants’ cost.
AFFIRMED.